**Alphonsoe CAMPBELL, Plaintiff,**

v.

**POLICE OFFICER DAVID FERNANDEZ et al.,
Defendants.**

**No. 98 CIV. 0140(CM).**

United States District Court,
S.D. New York.

May 21, 1999.

Noel Tepper, Noel Tepper, Esq., Poughkeepsie, NY, for Alphonsoe Campbell, plaintiff.

David L. Posner, McCabe & Mack, Poughkeepsie, NY, for David Fernandez, Police Officer, L. Police Officer, John Doe, Richard Roe, Michael Moe, and other members of the City of Poughkeepsie Police Department Neighborhood Recovery Unit, Westchester County D.E.A. Drug Task Force Whose Names are Unknown, the City of Poughkeepsie Police Department, defendants.

## MEMORANDUM DECISION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT DISMISSING THE COMPLAINT

McMAHON, District Judge.

In this action arising out of the arrest and subsequent strip search of plaintiff, defendants move for summary judgment dismissing the complaint. The motion is denied.

Viewed most favorably to plaintiff, the facts are as follows: plaintiff, a forty-six year old construction worker, stopped by Marksman's Mini Mart Grocery Store in Poughkeepsie to purchase a beer on his way home from work. He went to the basement of the store to drink the beer, where he was joined by another individual. Soon thereafter, he heard the owner of the store, Basil White, yell "Thief, thief!" and saw him running down the basement stairs pursued by a man with a gun wearing a ski mask. This man was defendant PO David Fernandez of the Poughkeepsie Police Department.

Officer Fernandez and several compatriots were executing a search warrant that had been issued after presentation of

an affidavit from another Poughkeepsie police officer, defendant Lawrence Bartolotti, which indicated that DEA agents had made several undercover buys of marijuana from the location. During one of the two controlled buys, the marijuana was retrieved from the basement of the store. The search warrant authorized the search of Mr. White, another male (identity unknown) described as dark-complected African American, early 40s, moustache, medium build, about 5′–10″ or 5′–11″, who had retrieved the marijuana from the basement during the controlled buy. Other than knowing that plaintiff is an African American male, I have no basis for concluding that plaintiff met the description of the unknown male, so as to bring him within the specific parameters of the search warrant. The warrant also directed that any person present could be searched pursuant to New York's Criminal Procedure Law § 690.15(2), which provides that: "A search warrant which directs a search of a designated or described place, premises or vehicle, may also direct a search of any person present thereat or therein." N.Y.Crim. Proc. Law § 690.15 (McKinney 1994). Of course, it is well-settled, and has been for a very long time, that this overly-broad directive cannot be read literally, and does not authorize executing officers to search anyone unless the application demonstrates probable cause for the search of that person. *See People v. Nieves,* 36 N.Y.2d 396, 404, 369 N.Y.S.2d 50, 60, 330 N.E.2d 26 (1975).

Upon arriving in the basement, Officer Fernandez and a second masked individual (also a police officer) detained plaintiff and White by pointing their guns, directing them to lay down on their stomachs and handcuffing them. Plaintiff was patted down in the basement; no weapons were discovered. Plaintiff was then taken upstairs to the public area of the store, where he was directed by Officer Bartolotti to remove all of his clothing. Plaintiff and White were thereupon strip searched in the store—not in the restroom or in a non-public area. Plaintiff disputed the officers'

right to strip search him, and also asked that they at least wait until they arrived at the police station to conduct their search. The officers refused.

The officers allegedly taunted the two men (both of them black) about the size of their penises and addressed them by racial epithets during the search. A full-body cavity search revealed no contraband on plaintiff. The officers also carefully searched his clothing, however, and found a small bag of marijuana in one of his pants pockets. Plaintiff was taken to the station house and booked for a violation after being fingerprinted and processed in the manner of a felony arrestee. He later pleaded guilty to the violation.

*Discussion*

■■■ Although plaintiff's complaint is far from a masterpiece of legal draftsmanship, his First Cause of Action adequately pleads a claim against the named individual defendant police officers for violation of his Fourth Amendment rights by virtue of the police conduct described above. To the extent he alleges that his First and Fifth Amendment rights were violated, the claim is dismissed. Moreover, to the extent plaintiff purports to assert a claim for false arrest, it must be dismissed, as plaintiff's guilty plea—whatever the reason for it—constitutes conclusive evidence of the good faith and reasonableness of the officer's belief in the lawfulness of that arrest. *See Cameron v. Fogarty,* 806 F.2d 380, 388 (2d Cir.1986).

This leaves his claim for the violation of his rights by virtue of the strip search conducted in the store. The Fourth Amendment guarantees an individual's right to be free from "unreasonable" searches and seizures. Defendants contend that their strip search of plaintiff was reasonable, because the warrant authorized them to search "any person" on the premises, and because the information available to them—plaintiff's presence in the basement, a non-public area of the premises from which marijuana had been

procured during a controlled buy—strongly suggested that he might be involved in drug activity. They justify the need to strip search plaintiff immediately, in the store, on the ground that drugs can be easily secreted and disposed of.

Plaintiff urges that the officers had no probable cause to search him, as his mere presence in a drug-prone location was insufficient and they had no basis to believe that he had anything to do with the prior buy or that he was involved in drug activity when they found him. He also contends that strip-searching him in a public place, rather than waiting until he was removed to the precinct, where he could be searched in privacy, was patently unreasonable—especially as he had been frisked and found clean of weapons and, once handcuffed, was in no position to dispose of any contraband that might have been secreted on his person.

■ Defendants are correct that settled law would permit them to search an individual found in plaintiff's compromising position, based on the information underlying the search warrant. *See, e.g., Nieves, supra,* 36 N.Y.2d 396, 404–05, 369 N.Y.S.2d 50, 330 N.E.2d 26; *see also, Watt v. Richardson,* 849 F.2d 195 (5th Cir.1988). Therefore, plaintiff's claim of lack of probable cause is unfounded. They are also correct that a strip search, in and of itself, would not necessarily violate plaintiff's rights, in view of the nature of the crime defendants were investigating, the circumstances of the arrest, and the proven ability of drug dealers to secrete contraband on their persons. *See Weber v. Dell,* 804 F.2d 796 (2d Cir.1986).

■ However, that does not dispose of the question of whether it was reasonable to strip plaintiff in the store, when there was no evidence to suggest either that Campbell represented any threat to the officers or that, once arrested, he had the ability to dispose of contraband before they could find it. Based on the evidence before me, a reasonable juror could easily find that the police officers—who were carrying out a procedure already found by courts to be an invasion of rights "of the first magnitude," *Chapman v. Nichols,* 989 F.2d 393, 395 (10th Cir.1993)—acted unreasonably in subjecting plaintiff to the added humiliation of being denuded, exposed and taunted in a public place. There is a disputed issue of fact concerning just how public the area of the premises where plaintiff was searched was—the officers assert that plaintiff was shielded from public view, plaintiff and Mr. White say otherwise—and that disputed fact is a *material* fact, as the reasonableness of defendants' conduct may depend in significant part on just how private or public the area was. This particular aspect of plaintiff's claim, therefore, must be decided by a jury.

■ Defendants' claim that they are entitled to qualified immunity must also go to trial. The question of whether, in the circumstances presented, it was objectively reasonable for the officers to strip a man in a public place and force him to expose his most intimate body parts to public view is clearly an issue of fact that is reserved for the jury. *See, e.g., Rodriguez v. City of New York,* 72 F.3d 1051, 1065 (2d Cir. 1995).

■ Plaintiff's second claim for relief is directed against the City of Poughkeepsie Police Department, which allegedly has a policy of strip searching everyone found at a drug location—which policy, if it exists, would be patently unconstitutional. *See Weber,* 804 F.2d at 802; *Wachtler v. County of Herkimer* 35 F.3d 77, 81 (2d Cir. 1994). Poughkeepsie disputes the existence of any policy, but the defendant officers testified that they acted pursuant to such a policy when they strip searched plaintiff. Because it is alleged that the defendants acted pursuant to an unconstitutional policy or practice, there is no basis to dismiss the claim against the City on *Monell* grounds. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To the

extent that the complaint as drafted purports to hold the City liable in negligence, that claim is dismissed.[1]

The parties are directed to file a Joint Pre–Trial Order (limited to the issues that remain in the case), proposed voir dire (limited to case-specific questions), in limine motions and proposed jury instructions by June 25, 1999. Responses to in limine motions are due July 9, 1999. The final pre-trial conference will be scheduled as soon as all pre-trial papers are submitted.

This constitutes the decision and order of the Court.

---

**1.** I realize that I am reading the literal language of the complaint generously. However, the full record, as developed during discovery and submitted to the Court on this motion, is more than sufficient to make out the one and only claim under 42 U.S.C. § 1983 that can be asserted directly against a municipality. To the extent it may be necessary, the complaint will be deemed amended to assert such a claim.